UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

| | |
|---|---|
| JEFFREY FELDMAN,<br><br>                Plaintiff,<br>v.<br><br>NANCY A. BERRYHILL, Acting<br>Commissioner of Social Security,<br><br>                Defendant. | Case No. 2:16-cv-01888-GWF<br><br>**ORDER**<br><br>**Re: Motion for Reversal and/or Remand (ECF No. 20)** |

This case involves judicial review of an administrative action by the Commissioner of Social Security denying Plaintiff Jeffrey Feldman's claim for disability benefits under Titles II and XVI of the Social Security Act. Plaintiff filed his Motion for Reversal and/or Remand (ECF No. 20) on October 18, 2017. The Commissioner filed her Cross-Motion to Affirm (ECF No. 21) and Opposition to Plaintiff's Motion to Remand (ECF No. 22) on November 17, 2017.

**BACKGROUND**

**A. Procedural History**

Plaintiff filed a Title II application for a period of disability and disability insurance benefits on January 6, 2012. He also filed a Title XVI application for supplemental security income on January 6, 2012. In both applications, Plaintiff alleged that his disability began on May 31, 2011. Administrative Record ("AR") 197-214. The Social Security Administration denied Plaintiff's claims initially on June 7, 2012 and upon reconsideration on August 26, 2013. AR 81, 95, 150-152. Plaintiff requested a hearing before an Administrative Law Judge ("ALJ") which was conducted on September 4, 2014. AR 13. Plaintiff and a vocational expert testified at the hearing. The ALJ issued his decision on February 10, 2015 and concluded that Plaintiff

1

was not disabled at any time between the date his applications were filed and the date of the decision. AR 29. The Appeals Council denied his request for review on June 14, 2016. AR 1-7. Plaintiff then commenced this action for judicial review pursuant to 42 U.S.C. § 405(g). This matter has been referred to the undersigned for a report of findings and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B) and (C).

**B. Factual Background**

Plaintiff's motion for reversal and/or remand is limited to whether the ALJ improperly rejected the opinion of psychologist, Paul Jones, Ed.D., who performed a consultative mental status examination of Plaintiff on April 4, 2012. The Court will therefore focus on the evidence relating to Plaintiff's mental condition, and will discuss Plaintiff's physical impairments only to the extent necessary to understand Plaintiff's claim for disability benefits, and as relevant to his alleged mental impairment.

**1. Plaintiff's Disability Reports and Hearing Testimony.**

Plaintiff was born on June 5, 1953. He is 6'1" tall and weighed approximately 300 pounds at the time of his application. AR 228. He resided with his mother who was eighty-five years old. AR 198. He has a Bachelor of Arts degree. AR 60. Plaintiff was self-employed, renovating homes, from 1999 to 2005. He thereafter worked as an operations manager at a UPS store owned by his brother from 2005 to 2011. AR 42-46. In his January 7, 2012 disability report, Plaintiff listed the following conditions that limit his ability to work: "Diabetes, heart problems, high blood pressure, herniated discs, migraines, enlarged prostate, torn tibial tendons in both knees, right knee damage, incontinent, sjourns syndrome, shingle and other skin disorders, and depression." AR 227-237.

Plaintiff stated in a February 9, 2012 function report that he could not stand or walk for any period of time. His ankles, knees and shoulders had been damaged over the years, and severe arthritis had taken over his body. He had daily chest pain that was brought on by stress. AR 246. He was unable to walk or lift items easily and was in severe pain for a majority of the day. Plaintiff was unable to sleep in a bed, and slept 2-4 hours a night in a recliner. AR 247. He had steadily looked for employment that would accommodate his illness, but had not been able

to find a job. AR. 247. Plaintiff dressed himself and his mother on a daily basis, and took care of the family dog. He was able to shower with difficulty due to loss of motion in the arms and shoulder. He needed help shaving because of carpel tunnel syndrome in both hands and a damaged right rotator cuff. He also needed help with "foot care," had damaged tendons in both ankles, and needed a right knee replacement. AR 247.

Plaintiff stated that he was unable to concentrate for any period of time and became very moody when questioned. He was frustrated when any negative events occurred. AR 246. His mother reminded him daily of his appearance and grooming needs, and he needed reminders to take medication. He also forgot to prepare meals. AR 248. He rarely needed reminders to go places, but sometimes needed someone to accompany him. AR 250. He had become very temperamental in getting along with family, friends and neighbors. His attention span was relatively good, and he was fair to good at following written instructions. He could follow spoken instructions when they were properly explained. AR 251. Plaintiff stated that he had always been an authority figure at work and knew how to treat people properly. He had difficulty with stress and cracked very easily when something didn't go as expected. He had become claustrophobic. AR 252.

Plaintiff stated that he was able to prepare sandwiches and frozen dinners on a daily basis, and do laundry about two hours a week. AR 248. He did not do yardwork or housework. He was able to go outside alone, and walk and drive a car. He shopped by computer, and went to the supermarket a few times a week. Plaintiff was able to pay bills, count change, and use a checkbook or money orders. He did not have a savings account. AR 249. His hobbies and interests were watching television and working when able. He needed a job that would allow his disabilities and illnesses. He talked on the phone with others a couple of times a week. AR 250-251.

Plaintiff had difficulty lifting, squatting, bending, standing, walking, kneeling, climbing stairs, completing tasks, concentrating, using his hands and getting along with others. He could only walk about 100 to 200 feet before needing to stop and rest. AR 251. He used a cane, prescribed by his doctor, for walking or standing for extended periods. AR 252. Plaintiff filled

3

1 | out a headache form indicating that he regularly had severe headaches. He additionally noted
2 | that he did not have health insurance. AR 253-254.

Plaintiff testified at the September 4, 2014 hearing that he stopped working due to pain in his legs, ankles, severe migraine headaches, inability to multi task and shortness of breath. AR 47. Cysts had developed on the muscles in his legs. He was unable to stand for any significant periods of time because his kneecaps swelled with fluid. AR 48. He did not have surgery because the recovery time was too long, and the doctors told him that he would not be a good surgical candidate. He had received cortisone injections and took several types of pain medication to relieve his ankle pain. AR 49. His calf also swelled throughout the day, and he kept his feet elevated to reduce the swelling. AR 51. His right knee locked when he walked. AR 51. Pain radiated down both sides of his back, and he was unable to go up and down the stairs, or bend down and stand back up without assistance. AR. 52.

Plaintiff testified that he underwent hernia surgery several years earlier, and the mesh implanted in that surgery had deteriorated. He had recently developed a cyst in his groin which required him to be hospitalized. While in the hospital, he contracted the MRSA virus. He was treated for the virus for approximately three weeks prior to the hearing. AR 53. Because of the pain in his abdomen, he was unable to lift most things. He also suffered from digestive issues including irritable bowel and diverticulosis. AR 54.

Plaintiff testified that he was unable to stand, sit or walk for too long. He could not remain seated for longer than 10 to 15 minutes. AR 55. He did not walk very much and did not exercise. He believed that he would not be able to work in a sedentary job because he needed to continuously use the bathroom throughout the day and had trouble sitting for extended periods. Plaintiff testified that he would not be able to perform his prior job as a UPS store manager. He had worked in a store owned by his brother, and was able to be his own boss and take breaks as he needed. His brother's store was no longer in business and he did not believe he would be able work for someone else. AR 57.

. . .

. . .

### 2. Vocational Expert's Testimony

The vocational expert testified that Plaintiff's pasts work as the general manager of a UPS store was classified as light work with an SVP of 8 under Dictionary of Occupational Titles ("DOT") 189.117-022. The job as performed by Plaintiff, however, would be classified as heavy work. Plaintiff's past work renovating houses was comparable to that of a general building contractor, DOT 182.167-010, which was classified as light work with an SVP of 7. The job as performed by Plaintiff was at least medium level work. The vocational expert stated that Plaintiff acquired some skills in these jobs that would be transferrable to other light or sedentary work. AR 62-63.

The ALJ asked the vocational expert to assume a hypothetical individual of the same age, education, and work experience as Plaintiff. The individual was restricted to the medium exertional level with occasional climbing of ramps, stairs, ladders, ropes, and scaffolds, occasional balance, stoop, kneel, crouch, and crawl, with no manipulative limits. The individual would have to avoid concentrated exposure of extreme heat, cold, fumes, odors, dust, gases, poor ventilation, and pulmonary irritants. AR 63. The vocational expert testified that the hypothetical individual would be able to perform Plaintiff's prior work as a general manager, performed at the medium level. The hypothetical individual could also perform Plaintiff's past work as a general contractor per the DOT, but not as Plaintiff performed it, i.e., at the heavy exertional level. AR 63.

The ALJ asked the vocational expert to assume that the hypothetical individual would be further limited to performing simple, routine, repetitive tasks, and some detailed tasks. The vocational expert testified that with this additional limitation, the individual would not be able to perform Plaintiff's prior jobs. The individual could, however, perform other jobs available in the national economy, including hand packer, kitchen helper/dishwasher, or courtesy clerk. AR 64. If the individual was further limited to light work, the jobs of hand packer and kitchen helper/dishwasher, both medium level jobs, would be eliminated. AR 64. Under further questioning by Plaintiff's counsel, the vocational expert agreed that the jobs of courtesy clerk and kitchen helper/dishwasher would be eliminated due to the limitation to occasional balancing,

stooping, kneeling, crouching and crawling. Thus, the only other work identified by the vocational expert that Plaintiff could perform was that of hand packer. AR 65-66.

### 3. Medical Records

Paul Jones, Ed.D., performed a consultative psychological examination of Plaintiff on April 14, 2012. AR 445-449. Dr. Jones stated that Plaintiff's reaction to the interviewer was unremarkable, and his level of consciousness appeared alert. Plaintiff was oriented to person, place and time, and he appeared to have an adequate understanding of the purpose of the evaluation. AR 446. Plaintiff's responses to symptoms "that typically have very low endorsement rates were not indicative of exaggerated symptom report." AR 447. It appeared that Plaintiff attempted to provide maximum performance during the interview, and there were no evident indicators of exaggeration or deliberate malingering. Under "Functional Assessment," Dr. Jones stated that Plaintiff's underlying cognitive ability to understand, remember, and carry out simple tasks appeared intact. His underlying ability to work with detailed tasks appeared limited by occasional lapses in attention and/or concentration. He also appeared to be limited in the ability to work with complex tasks. His performance on working memory tasks suggested that problems with attention/concentration were occasional. Under "Summary and Prognosis," Dr. Jones stated that Plaintiff's overall performance was not consistent with the reported level of education (graduate school), and the possibility of cognitive decline could not be ruled out. The prognosis for Plaintiff's ability to return to work was contingent on confirmation of his physical symptoms and the extent to which remediation was possible. AR 449.

On June 4, 2012, Wenceslao A. Cabaluna, M.D., performed a consultative physical examination of Plaintiff. AR 452-457. He noted that Plaintiff was morbidly obese, properly dressed, coherent, and oriented to time, place, person, and understood the purpose of the visit. Plaintiff's blood pressure, speech, hearing and skin were normal. AR 454. The findings on physical examination were generally unremarkable. Under "Extremities," Dr. Cabaluna noted that Plaintiff's hand grasp was 5/5 on each side. There was no evidence of hand tremors, clubbing of the fingers and toes, or pitting edema on either leg. Plaintiff raised his right shoulder

to 90 degrees and his left to 100 degrees, actively and passively. He flexed his right knee to 100 degrees. He had normal dexterity with his hands. Dr. Cabaluna found no evidence of scoliosis, or paravertebral muscle tenderness or spasms in the spine. Range of motion of the cervical and lumbar spine was generally within normal limits, except that Plaintiff had restricted flexion and extension of the lumbar spine. AR 460.

Dr. Cabuluna completed a checklist form regarding Plaintiff's physical residual functional capacity. He found that Plaintiff could occasionally lift up to 50 lbs. and frequently lift up to 25 lbs. Plaintiff could sit or stand about 6 hours in an 8-hour workday, and could frequently climb ramps or stairs, stoop, kneel, crouch, or crawl if necessary. Plaintiff could occasionally climb ladders or scaffolds. His ability to reach was limited due to pain in his shoulder, and he had environmental restrictions to temperature extremes, chemicals, and dust. AR 461-462.

On August 23, 2013, state agency psychologist Sally Skewis performed a records review regarding Plaintiff's mental condition. AR 110-111. She found under Criteria "A" that Plaintiff had an affective disorder and anxiety-related disorder that did not precisely satisfy the diagnostic criteria. Under Criteria "B," Plaintiff had no restrictions of daily living, no difficulty in maintaining social functioning, moderate difficulties in maintaining concentration, persistence or pace, and no repeated episodes of decompensation. Dr. Skewis stated that the evidence did not establish the presence of the "C" criteria for either diagnosis. AR 111.

Dr. Skewis stated that during a Field Office staff interview on June 6, 2012, staff did not observe any functional limitations, but noted that Plaintiff cried throughout the interview and stated that he was mainly depressed due to incontinence. The records did not indicate a worsening of mental health problems. Valium caused lightheadedness. The doctor noted that Plaintiff watched television, used a computer, read, did laundry, walked and drove and went to Big Brother/Sister. AR 111. Dr. Skewis reviewed Dr. Jones's April 14, 2012 report and noted that he concluded that Plaintiff was able to learn, understand, remember, and complete simple tasks and some detailed tasks. AR 111-112.

Dr. Skewis completed a mental residual functional capacity assessment. She found that Plaintiff had understanding and memory limitations. However, his ability to remember locations and work like procedures, and to understand and remember very short and simple instructions was not significantly limited. His ability to understand and remember detailed instructions was moderately limited. He had limitations regarding sustained concentration and persistence. AR 115. Plaintiff's ability to carry out detailed instructions, and maintain attention and concentration for extended periods was moderately limited. He was not limited in his ability to perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances; to sustain ordinary routine without specific supervision; to work in coordination with or in proximity to others without being distracted by them; to make simple work-related decisions; to complete a normal workday and workweek without interruptions from psychologically based symptoms; and to perform at a consistent pace without an unreasonable number and length of rest periods. Dr. Skewis also found that Plaintiff did not have social interaction or adaption limitations. AR 116.

**C. The ALJ's Decision**

The ALJ applied the five-step sequential evaluation process established by the Social Security Administration, 20 CFR § 416.920(a), to determine whether Plaintiff was disabled. AR 19-20. At step one, he found that Plaintiff met the insured status requirements of the Social Security Act through December 31, 2016. At step two, the ALJ found Plaintiff had not engaged in substantial gainful activity since the date of his application. At step three, the ALJ found that Plaintiff had the following severe impairments: obesity, muscle/ligament/fascia disorder of the right ankle, posterior tibial tenosynovitis and medial ankle subcutaneous edema, moderate sinus tarsi syndrome, chronic moderate-grade sprains of the anterior tibiofibular and calcaneofibular ligaments, chronic plantar fasciitis, and plantar calcaneal enthesophyte. AR 19. He found that Plaintiff's obesity was a severe impairment because he weighed 285 pounds which put his body mass index ("BMI") at 37.6. Although obesity is not a listed impairment, the ALJ found that it affected Plaintiff's ability to ambulate and impacted his other body systems. AR 20.

The ALJ found that Plaintiff's diabetes mellitus, hypertension, chronic obstructive pulmonary insufficiency, atypical migraine, chronic bacterial prostatitis, obstructive sleep apnea, and affective disorder were not severe impairments because they did not cause more than minimal limitations on his ability to perform basic work activities. AR 20. In finding that Plaintiff's mental impairments were non-severe, the ALJ stated that Plaintiff had no limitations with respect to his daily activities, social functioning, or decompensation; and had only a mild limitation related to his ability to sustain focused attention and concentration. AR 20-21. The ALJ determined that "[b]ecause the claimant's medically determinable mental impairment causes no more than 'mild' limitation in any of the first three functional areas and 'no' episodes of decompensation which have been extended duration in the fourth area, it is non-severe." AR 21. The ALJ also found that Plaintiff did not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925, and 416.926). AR 21-22.

Prior to step four, the ALJ found that Plaintiff had the residual functional capacity to perform less than the full range of medium work, as defined in 20 C.F.R. §§ 404.1567 and 416.967(c). Specifically, Plaintiff could occasionally climb ramps, stairs, ladders, ropes and scaffolds and balance, stoop, kneel, crouch, and crawl. Plaintiff was to avoid "concentrated exposure to extreme heat and cold, fumes, odors, dusts, gases, poor ventilation and pulmonary irritants." AR 22. The ALJ stated that if Plaintiff's daily activities were as limited as he alleged, it would be difficult to attribute that degree of limitation to his medical condition in light of the benign medical evidence. AR 22. He also stated that Plaintiff was able to engage in a somewhat normal level of activities which reflected a significant functional capacity. AR 23.

The ALJ gave significant weight to the opinions of Dr. Cabaluna and the State agency medical consultants regarding Plaintiff's physical residual functional capacity. AR 26. The ALJ noted that Dr. Cabaluna's opinion was based on his in-person examination of Plaintiff, and was supported by objective, medically acceptable clinical and laboratory diagnostic techniques. AR 26. The ALJ gave little weight to Dr. Jones's opinion regarding Plaintiff's mental residual

functional capacity. Although his opinion was also based on an in-person examination, the ALJ stated that "the limitations were not specific or consistent with Dr. Jones' own examination or the objective evidence in the record." The ALJ also gave little weight to the opinion of the state agency psychologists because their opinions were not reasonably supported by the available evidence of record which showed multiple normal mental status evaluations. AR 26.

Based on his determination of Plaintiff's residual functional capacity and the testimony of the vocational expert, the ALJ found that Plaintiff was capable of performing his past jobs of general manager and general building contractor as those jobs are generally performed. AR 27. He also found, at step five of the process, that Plaintiff could perform the jobs of hand packer, kitchen helper/dishwasher and courtesy clerk. AR 27-28.

## DISCUSSION

### I. Standard of Review

A federal court's review of an ALJ's decision is limited to determining (1) whether the ALJ's findings were supported by substantial evidence and (2) whether the ALJ applied the proper legal standards. *Smolen v. Chater*, 80 F.3d 1273, 1279 (9th Cir. 1996); *Delorme v. Sullivan*, 924 F.2d 841, 846 (9th Cir. 1991). The Ninth Circuit has defined substantial evidence as "more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Lewis v. Apfel*, 236 F.3d 503, 509 (9th Cir. 2001); *Trevizo v. Berryhill*, 871 F.3d 664, 674 (9th Cir. 2017). The Court must look to the record as a whole and consider both adverse and supporting evidence. *Penny v. Sullivan*, 2 F.3d 953, 956 (9th Cir. 1993). Where the factual findings of the Commissioner of Social Security are supported by substantial evidence, the District Court must accept them as conclusive. 42 U.S.C. § 405(g). Hence, where the evidence may be open to more than one rational interpretation, the Court is required to uphold the decision. *Moore v. Apfel*, 216 F.3d 864, 871 (9th Cir. 2000) (quoting *Gallant v. Heckler*, 753 F.2d 1450, 1453 (9th Cir. 1984)); *see also Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009). The court may not substitute its judgment for that of the ALJ if the evidence can reasonably support reversal or affirmation of the ALJ's decision. *Flaten v. Sec'y of Health and Human Serv.*, 44 F.3d 1453, 1457 (9th Cir. 1995).

It is incumbent on the ALJ to make specific findings so that the court need not speculate as to the findings. *Lewin v. Schweiker*, 654 F.2d 631, 635 (9th Cir. 1981) (citing *Baerga v. Richardson*, 500 F.2d 309 (3rd Cir. 1974)). In order to enable the court to properly determine whether the Commissioner's decision is supported by substantial evidence, the ALJ's findings "should be as comprehensive and analytical as feasible and, where appropriate, should include a statement of subordinate factual foundations on which the ultimate factual conclusions are based." *Lewin*, 654 F.2d at 635.

In reviewing the administrative decision, the court has the power to enter "a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g). In the alternative, the court "may at any time order additional evidence to be taken before the Commissioner of Social Security, but only upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding." *Id.*

**II. Disability Evaluation Process**

To qualify for disability benefits under the Social Security Act, a claimant must show that: (a) he/she suffers from a medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less that twelve months; and (b) the impairment renders the claimant incapable of performing the work that the claimant previously performed and incapable of performing any other substantial gainful employment that exists in the national economy. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999); *see also* 42 U.S.C. § 423(d)(2)(A). The claimant has the initial burden of proving disability. *Roberts v. Shalala*, 66 F.3d 179, 182 (9th Cir 1995), *cert. denied*, 517 U.S. 1122 (1996). If the claimant establishes an inability to perform his or her prior work, the burden shifts to the Commissioner to show that the claimant can perform a significant number of other jobs that exist in the national economy. *Hoopai v. Astrue*, 499 F.3d 1071, 1074–75 (9th Cir. 2007). Social Security disability claims are evaluated under a five-step sequential evaluation procedure. *See* 20 C.F.R. § 404.1520(a)-(f). *Osenbrock v. Apfel*, 240 F.3d 1157, 1162 (9th Cir. 2001). If a claimant is found to be disabled, or not disabled, at any point during the

1 process, then no further assessment is necessary. 20 C.F.R. § 404.1520(a). The ALJ correctly set
2 forth five steps in his decision, AR 18-19, and they will not be repeated here.

### III. Whether the ALJ Erred in Rejecting Dr. Jones's Opinion.

Plaintiff argues that the ALJ committed reversible error by failing to provide specific and legitimate reasons for rejecting Dr Jones's opinion. The Commissioner argues that the ALJ did not commit error, but even if he did, the error was harmless.

Under the standards in effect when Plaintiff's claim was adjudicated, more weight should generally be given to the opinion of a treating physician than to those of physicians who do not treat the claimant. *Garrison v. Colvin*, 759 F.3d 995, 1012 (9th Cir. 2014); *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). The opinion of an examining physician is also generally entitled to greater weight than that of a reviewing physician. *Id.*, at 1012 (citing *Ryan v. Comm'r of Soc. Sec.*, 528 F.3d 1194, 1198 (9th Cir. 2008)). The weight afforded to a reviewing physician's opinion depends on the degree to which he provides a supporting explanation for his opinions. *Id.* If a treating or examining physician's opinion is contradicted by another doctor's opinion, the ALJ may only reject it by providing specific and legitimate reasons supported by substantial evidence. "This is so because, even when contradicted, a treating or examining physician's opinion is still owed deference and will often be 'entitled to the greatest weight ... even if it does not meet the test for controlling weight.'" *Garrison*, 759 F.3d at 1012 (quoting *Orne v. Astrue*, 495 F.3d 625, 633 (9th Cir. 2007)).

Dr. Jones's opinion regarding Plaintiff's mental impairments or limitations was not contradicted by another physician. In rejecting the opinion, the ALJ stated that it was not consistent with Dr. Jones's own examination or the objective evidence in the record. AR 26. The ALJ did not explain, however, in what manner Dr. Jones's opinion was inconsistent with his examination findings or with the objective evidence in the record. Dr. Jones based his opinions on his observations of the Plaintiff and the tests that he performed, which he explained in reasonable detail in his report. He found that Plaintiff's underlying cognitive ability to understand, remember, and carry out simple tasks appeared intact. Plaintiff's underlying ability to work with detailed tasks, however, appeared limited by occasional lapses in attention and/or

concentration. He also appeared to be limited in the ability to work with complex tasks. Plaintiff's performance on working memory tasks suggested that problems with attention/concentration were occasional.

The ALJ also asserted that Dr. Jones did not describe Plaintiff's limitations with sufficient specificity. The ALJ did not explain how specificity was lacking. During the hearing, the ALJ asked the vocational expert whether a hypothetical individual who, was limited to "simple, routine, repetitive tasks, and some detailed tasks," could perform Plaintiff's past work. The vocational expert testified he could not. AR 63. This suggests that the limitations found by Dr. Jones were stated with sufficient specificity to make a reasonable determination about Plaintiff's ability to perform work activity. The Court therefore finds that the ALJ failed to provide specific and legitimate reasons for rejecting Dr. Jones's opinion.

The Commissioner argues that the ALJ's allegedly erroneous rejection of Dr. Jones's opinion was harmless. Dr. Jones only found that Plaintiff was limited with respect to performing detailed tasks. He was not limited with respect to simple tasks. "Moreover, Dr. Jones found any issues with attention/concentration to be 'occasional' which would not prevent Plaintiff from performing unskilled work where concentration was not critical." *Defendant's Cross-Motion* (ECF No. 21), at 5. The Commissioner also noted the ALJ's alternative finding that Plaintiff could perform the unskilled jobs of hand packer, kitchen helper/dishwasher and courtesy clerk. *Id.* at 5. N. 4. The ALJ and the Commissioner both overlook the fact that the vocational expert withdrew his opinion that the hypothetical individual could work as a kitchen helper/dishwasher or courtesy clerk based on requirements of those jobs for frequent stooping and/or crouching. This left standing the vocational expert's testimony and the ALJ's finding that a person with Plaintiff's residual functional capacity could work as a hand packer, for which there were 1,052,000 jobs available in the national economy. Plaintiff did not attempt to rebut the vocational expert's testimony or the ALJ's finding in that regard. Therefore, the ALJ's error in improperly rejecting Dr. Jones's opinion regarding Plaintiff's mental impairments was harmless. Accordingly,

. . .

13

## ORDER

**IT IS HEREBY ORDERED** that Plaintiff's Motion for Reversal and/or Remand (ECF No. 20) is **denied** and the Commissioner's Cross-Motion to Affirm (ECF No. 21) is **granted**.

## NOTICE

Pursuant to Local Rule IB 3–2, any objection to this Finding and Recommendation must be in writing and filed with the Clerk of the Court within fourteen (14) days. The Supreme Court has held that the courts of appeal may determine that an appeal has been waived due to the failure to file objections within the specified time. *Thomas v. Arn*, 474 U.S. 140, 142 (1985). This circuit has also held that (1) failure to file objections within the specified time and (2) failure to properly address and brief the objectionable issues waives the right to appeal the District Court's order and/or appeal factual issues from the order of the District Court. *Martinez v. Ylst*, 951 F.2d 1153, 1157 (9th Cir. 1991); *Britt v. Simi Valley United Sch. Dist.*, 708 F.2d 452, 454 (9th Cir. 1983).

Dated this 7th day of May, 2019.

_____
**GEORGE FOLEY, JR.**
**UNITED STATES MAGISTRATE JUDGE**